**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MIKE O'CONNOR CHEVROLET–BUICK–GMC CO., INC. and Pat O'Connor Chevrolet-Buick-GMC Co., Inc., Respondents.**

No. 74–1645.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1975.

Decided March 18, 1975.

Charles A. Shaw, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Charles Kelso, Atlanta, Ga., for respondents.

Before HEANEY, Circuit Judge, and WANGELIN and NANGLE, District Judges.*

HEANEY, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order requiring Mike O'Connor Chevrolet-Buick-GMC Company, Inc., and Pat O'Connor Chevrolet-Buick-GMC Company, Inc., to bargain with the General Drivers, Warehousemen and Helpers Local No. 534, to post appropriate notices with respect to a § 8(a)(1) violation of the National Labor Relations Act, 29 U.S.C. § 151 et seq., and to make whole employees who may have suffered monetary losses by reason of unilateral changes made by the Employer in the terms and conditions of employment after the Union was certified by the Board as the bargaining agent of the employees.

## THE BARGAINING ORDER

Whether the bargaining order should be enforced depends on whether the Board correctly decided that a challenge to the vote of a single employee, Dave Martin, should be sustained on the grounds that he was a managerial employee. If so, the Union is entitled to certification. If not, the ballot of Dave Martin and another employee, William Glenn, must be opened and counted before a decision as to certification can be made.

The facts leading to the challenge of Martin's vote can be simply stated. The Board scheduled a pre-election hearing for February 21, 1973, in response to the Union's petition for certification. Before the hearing was formally convened, the Union and the Employer, in the presence of the Hearing Officer, discussed and agreed upon an appropriate unit and a list of eligible voters. The Union concedes that the parties specifically discussed Martin's status and agreed that he would be eligible to vote as the new and used truck salesman. Thereafter, a stipulation as to the unit was prepared and signed by the parties and ap-

* H. KENNETH WANGELIN and JOHN F. NANGLE, District Judges, Eastern District of Missouri, sitting by designation.

proved, in writing, by the Board representative. It defined the unit as follows:

All *new and used* automobile and *truck salesmen* including finance and insurance salesmen and appraiser-salesmen of the Mike O'Connor Chevrolet-Buick-GMC Co., of Sedalia, Missouri, but excluding office clerical employees, corporate officers, new car sales manager, used car sales manager, professional employees, guards and supervisors as defined in the Act and all other employees. [Emphasis added.]

The Regional Director approved the stipulation the next day, February 22, 1973.

On the day of the election, the Union challenged the vote of Martin on the grounds that he was a supervisor, and the vote of William Glenn, on the grounds that he was not an employee on the eligibility date agreed to by the parties. The Board challenged the ballot of Norman Capps, whose name was not on the typed voter eligibility list. As the challenged ballots were sufficient to affect the outcome of the election, a hearing was held before an administrative law judge. He found that Capps had been discharged for cause and was ineligible to vote, that Martin had managerial responsibilities sufficient to classify him as a supervisor within the meaning of the Act and was, therefore, ineligible to vote, and that the challenge to Glenn need not be considered because, without the votes of Capps and Martin, the Union won the election by a vote of eight to six. He recommended that the Board certify the Union as the collective bargaining representative of the employees. The Board adopted his recommendation.

The Employer contended before the administrative law judge and the Board that Martin's ballot should have been counted because of the agreement between the Union and the Employer which had been formalized into a stipulation for certification upon consent election. Neither the administrative law judge nor the Board considered this contention in their opinions. On appeal, however, the Board argues that a written and signed agreement constitutes a valid waiver only if it

* * * [1] *expressly* provides that issues of eligibility resolved therein shall be final and binding upon the parties * * * and * * * [2] is, in part or in whole, [not] contrary to the Act or established Board policy.

Norris-Thermador Corp., 119 N.L.R.B. 1301, 1302, 41 L.R.R.M. 1283 (1958) (Emphasis included.).

The Board contends that it is apparent from the face of the agreement that the agreement does not include a final and binding provision and is expressly contrary to settled Board and congressional policy in that it includes managerial employees in an employee bargaining unit.

■ The Board correctly cites *Norris-Thermador Corp., supra,* but it neglects to point out that it subsequently postulated a narrow exception to the first requirement of that case—the exception being that when the parties orally agree, in the presence of a Board agent, that a particular employee is to be included or excluded from a bargaining unit, no express written provision that the oral agreement shall be final or binding is required. *See* Banner Bedding, Inc., 214 N.L.R.B. No. 139, 87 L.R.R.M. 1417 (1974).[1] The exception makes sense and is appropriate here. The reasons given by the Board in *Banner Bedding* are persuasive:

* * * The obvious purpose of the [*Norris-Thermador*] requirement of an

---

1. In Banner Bedding, Inc., 214 N.L.R.B. No. 139, 87 L.R.R.M. 1417 (1974), the Board indicated that it also gave weight to the fact that the parties admitted that, but for the oral agreement reached before the Board agent, they were prepared to proceed to hearing on the eligibility issue and would not have signed the consent-election stipulation. While there is no such specific admission here, it is clear from the record that the parties were prepared to go to hearing before the Board Examiner, and freely and voluntarily entered into the stipulation for the consent election and agreed to a list of eligible voters, which included Martin.

express writing \* \* \* is to prevent the possibility of any party's obfuscating Board election procedures by pressing for litigation of eligibility claims based on alleged oral agreements, since occasions of discord or delay arise if there is any difference of opinion regarding the actual understanding reached by oral agreement. \* \* \*

*Id.* at 1417–1418. *Cf.*, N.L.R.B. v. Hood Corporation, 346 F.2d 1020 (9th Cir. 1965); Shoreline Enterprises of America, Inc. v. N.L.R.B., 262 F.2d 933, 943 (5th Cir. 1959).

■ The more difficult question to decide is whether the stipulation can be permitted to stand or whether it is contrary to the Act or established Board policy. We think it can be given effect. The stipulation is not contrary to the Act, since the managerial-employee exclusion is a creature of the Board. *See* North Arkansas Electric Coop., 185 N.L.R.B. No. 83, 75 L.R.R.M. 1068 (1970).

■ Nor is the stipulation contrary to established Board policy. The Board decides whether an employee is a manager on a case-by-case basis. The test is whether an employee's interests are more clearly allied with unit employees than with management. Martin spent most of his time selling new and used trucks. *See* G. K. Chevrolet, Inc., 176 N.L.R.B. 416, 71 L.R.R.M. 1255 (1969). He had some discretion in the performance of his job, but he was required to exercise that discretion in accordance with his employer's established policies. He exercised supervisory authority only on rare occasions. *See* Dundee Cement Co., 170 N.L.R.B. 661, 67 L.R.R.M. 1409 (1968). He had nothing to do with employee relation matters. His total pay and benefits, while computed on a basis different than other unit employees, was substantially the same as other unit em-

ployees. Under these facts, the parties did not violate established policy in agreeing that Martin's interests were more closely allied with unit employees than with management.

This is not to say that we would not have sustained the Board's decision absent the agreement. It is only to say that the agreement will not be set aside here because the agreement was a reasonable one entered into in good faith.

■■ In our view, if an agreement to include an employee in the appropriate unit is made by representatives of a union and an employer in the good faith belief that the employee is eligible for inclusion under current Board policy and is made in the presence of a Board representative, the Board is obligated to give effect to that agreement if the agreement is a reasonable one.[2] Here, the agreement to consider Martin as an employee having a community interest with other employees—rather than management—was made in good faith in the presence of a Board agent. The parties discussed the duties of each employee, including those of Martin, and agreed on the status of each employee. There is nothing in the record indicating that either party considered Martin to be a manager at the time the pre-election conference was held, or that there was any bad faith in the agreement. Finally, as we have pointed out, their conclusion that Martin was more closely allied to labor than management was reasonable.

## THE § 8(a)(1) VIOLATION

■ We do not believe that substantial evidence on the record as a whole supports the Board's finding that a § 8(a)(1) violation occurred when a non-supervisory employee, Pike Farris, told a fellow worker, Greg Buford, in the presence of a supervisor, George Riley:

**2.** *See* Tidewater Oil Company v. N.L.R.B., 358 F.2d 363 (2nd Cir. 1966); Semi-Steel Casting Co. v. National Labor Relations Board, 160 F.2d 388 (8th Cir.), cert. denied, 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344 (1947); White Cloud Products, Inc., 214 N.L.R.B. No. 70, 87 L.R. R.M. 1570 (1974); Banner Bedding, Inc., *supra*; Tribune Co., 190 N.L.R.B. No. 65, 77 L.R.R.M. 1193 (1971); Cruis Along Boats, Inc., 128 N.L.R.B. No. 115, 46 L.R.R.M. 1419 (1960). *Cf.* Utrad Corp., 185 N.L.R.B. No. 49, 75 L.R.R.M. 1068 (1970).

* * * [I]f there was a chance that the union got in Van Chevrolet was going to buy the company * * * from Mr. O'Connor, fire all the employees and do away with the union. There is no showing that the owner or Riley authorized, encouraged or ratified the statement, nor is there evidence that the failure to disavow the statement was part of a pattern of coercive conduct. The most that can be said is that Riley failed to disavow the single coercive statement made in his presence. This failure is insufficient to constitute a violation of the Act in the light of its isolated nature and in the light of other conversations held between Riley and Buford, none of which involved improper statements by Riley.

The cases cited by the Board in support of its position are inapposite.[3] In three of the cases, the coercive statements were made by supervisory employees; and in the fourth case, E. B. Law & Son, 92 N.L.R.B. 826, 27 L.R.R.M. 1168 (1950), enf'd, 192 F.2d 236 (10th Cir. 1951), the coercive statement was made by a nonunion employee in the presence of the employer, who not only failed to disavow the statement but affirmed it by his actions. Moreover, the employer in that case had engaged in other coercive conduct and that statement and the employer's reaction to it were part of a pattern of unfair labor practices.

## UNILATERAL WAGE CHANGES

Because we feel that the Union was not entitled to be certified on the basis of Martin's ineligibility to vote, we do not reach the question of whether O'Connor violated the Act by making unilateral wage changes after certification.

We refuse to enforce the Board's order and remand to the Board with directions to it to count Martin's ballot and then, if necessary, to rule on Glenn's eligibility to vote and thereafter to take such actions as are consistent with this opinion.

Costs are to be taxed to the Board.

3.  Air Control Products, Inc., 139 N.L.R.B. 607, 620, 51 L.R.R.M. 1363 (1962), enf'd per curiam, 344 F.2d 902 (5th Cir. 1965); N.L.R.B. v. Byrds Mfg. Co., 324 F.2d 329, 332 (8th Cir. 1963); N.L.R.B. v. Standard Oil Co., 124 F.2d 895, 908 (10th Cir. 1941).