**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FLOWERS BAKING COMPANY OF GADSDEN/a Division of Flowers Industries, Respondent.**

No. 77–2789.

United States Court of Appeals, Fifth Circuit.

Aug. 25, 1978.

Elliott Moore, Deputy Assoc., Gen. Counsel, John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, Allison W. Brown, Jr., Deputy Asst. Gen. Counsel, Thomas M. Gosselin, Atty., N. L. R. B., Washington, D. C., for petitioner.

John Anderson, John Arnold, Atlanta, Ga., for respondent.

Before TUTTLE, GEE and FAY, Circuit Judges.

GEE, Circuit Judge:

We decide in this case the validity of a union election among clerical workers at respondent's plant in Gadsden, Alabama. The election went in the union's favor by one vote, but the company refused to recognize the results because of the participation of an allegedly unqualified voter and because of a claimed misrepresentation by an electioneering union official. The company's timely objections to the election were overruled by the Board, which certified Service Employees International, AFL–CIO, as the collective bargaining agent. When the company refused to bargain with the union, still insisting on the invalidity of the election, the union filed a complaint with the Board, which found that the company's refusal constituted an unfair labor practice. The Board then ordered respondent to bargain upon request and, in the present proceedings, seeks enforcement of that order.

The contested voter in this case, Virginia Mashburn, was not working at the time of the election but is claimed to have been on maternity leave. Support for this contention comes from the company's failure to issue a formal notice of employment termination when she ceased work and its retention of her on the payroll, as is evidenced by her receipt of wages for Labor Day, a paid holiday, which predated the election by only one month. The company counters by attributing Mashburn's payroll status to clerical error and by pointing out the absence of any proof that the company ever agreed to place Mashburn on leave. We need not decide between these arguments, as did the Board, which found that Mashburn was an employee on election day. Instead, we hold that Mashburn's disqualification was established by the omission of her name from a voter eligibility list, which the company had submitted to the Board agent. Since we make this disposition of the case, we also do not reach the issue of union misrepresentation.

 The facts of this case begin with the union's petition for an election among twelve clerical employees.[1] After the filing of the petition, a Board representative served as an intermediary between the union and company in negotiations looking toward a consent election agreement. The negotiations succeeded with the signing of a "Stipulation for Certification Upon Consent Election," which provided, among other things, that the parties would furnish "an accurate list of all the eligible voters to the Regional Director. Seeking to comply with the stipulation, the company forwarded a list of twelve clerical workers, which did not include Virginia Mashburn's name. The Board agent accepted this list, and the election was held. When Mashburn appeared at the plant and attempted to vote, she initially was denied a ballot because her name was not on the voter list. The Board agent ultimately allowed her to cast a challenged ballot, which was later counted upon the Regional Director's determination that Mashburn had been on maternity leave at all relevant times.

Respondent does not claim that the voter list satisfied the *Norris-Thermador* rule,[2]

---

1. Mashburn was the thirteenth employee in the unit. She had already left work when the petition was filed.

2. *Norris-Thermador Corp.*, 119 N.L.R.B. 1301, 41 L.R.R.M. 1283 (1958). *Norris-Thermador* does not impart binding effect to all eligibility agreements but only those which are consistent with the National Labor Relations Act and with established Board policy. 119 N.L.R.B. at 1302, 41 L.R.R.M. at 1284. This restriction, we think, presents no difficulty here because there was a genuine question about Mashburn's employment status, which turned not on any statutory provision or Board policy but on the factual issue of whether Mashburn had voluntarily quit her job or had been placed on leave. *See Trilco City Lumber Co.*, 226 N.L.R.B. 289, 93 L.R.R.M. 1360 (1976); *Shaw Industries*, 218 N.L.R.B. 1196, 1208, 89 L.R.R.M. 1888, 1889 (1975), *enf'd,* 529 F.2d 1350 (5th Cir. 1976).

which gives binding effect to written eligibility agreements, for the simple reason that there was no written agreement in this case.[3] Respondent contends instead that the voter list falls under the narrow exception to *Norris-Thermador* created in *Banner Bedding, Inc.,* 214 N.L.R.B. 1013, 87 L.R.R.M. 1417 (1974), *remanded without published opinion,* 556 F.2d 588 (9th Cir. 1977),[4] which held that an oral eligibility agreement will be considered binding if made in the presence of a Board agent, provided that its existence and terms are undisputed by the parties. *Accord NLRB v. Mike O'Connor Chevrolet-Buick-GMC Co.,* 512 F.2d 684, 686–87 (8th Cir. 1975); *Esten Dyeing & Finishing Co.,* 219 N.L.R.B. 286, 89 L.R.R.M. 1621 (1975). The company finds support for the applicability of *Banner Bedding* in telephone conversations it claims to have had with the Board's agent. Shortly after the consent election agreement was signed, the Board scheduled a unit determination hearing, but a company representative contacted the Board agent by telephone, telling him that the hearing would be unnecessary if the union would agree to the submitted voter list. The company fully expected the union's agreement because the petition for election had referred to a bargaining unit of twelve persons, and the company's list named twelve voters. The Board agent subsequently informed the company, via telephone, that the union had accepted the list and that the unit determination hearing would be cancelled.

3. Although the signed stipulation provided for an accurate voter list, it was by no means an eligibility agreement. The list to which the stipulation referred was an *Excelsior* list, *see Excelsior Underwear, Inc.,* 156 N.L.R.B. 1236, 1239–40, 61 L.R.R.M. 1217, 1218 (1966), which the employer must furnish the union prior to the election so that union officials can contact all members of the bargaining unit.

4. The unpublished reason for the Ninth Circuit's remand of *Banner Bedding* was the court's belief "that the purpose of the Act would not be served thereby," which presumably means that the Ninth Circuit adheres to a strict application of *Norris-Thermador's* requirement of a signed writing. As is later explained, we too strongly favor written eligibility

The Board's sole response to the company's claim of a binding oral agreement is that the Board agent never convened a face-to-face meeting with the parties in which eligibility issues could have been discussed and resolved. Unlike the Board, we attach no importance to the absence of a personal meeting between the parties in the presence of the Board agent. *Banner Bedding* requires the agent's presence only in order to avoid controversies over the existence and terms of the oral agreement, *see* 214 N.L.R.B. at 1014, 89 L.R.R.M. at 1417–18; *NLRB v. Mike O'Connor Chevrolet-Buick-GMC Co.,* 512 F.2d at 686–87, and on the facts here the agent's telephone conversations with the parties were sufficient for that purpose. As to the absence of any actual discussion between the parties concerning Mashburn's status, we fail to understand why this should be a reason for discarding the eligibility agreement. The probable explanation is that neither party considered Mashburn an employee and saw no need for discussion. After all, the union's own petition for election apparently excluded Mashburn since it defined the bargaining unit to include twelve rather than thirteen employees. Moreover, given the size of the unit, it is difficult to believe that the union could have simply overlooked Mashburn. Even if it had, however, we would still uphold the list because the inadvertent omission of an eligible employee— much less one of questionable status—does not render a vote list susceptible to challenge by either party[5] unless the mistake is

agreements but do not go so far as to say that *Norris-Thermador* admits of no exception on the compelling facts in this case.

5. If Mashburn had chosen to intervene in these legal proceedings and to assert her participatory rights, we might have reached a different result on the basis of *Shoreline Enterprises of America, Inc. v. NLRB,* 262 F.2d 933, 943 (5th Cir. 1959), in which this court gave effect to an eligibility agreement as between union and company but went on to hold that the intervening employees could not be disenfranchised because they themselves had not been parties to the agreement. The facts in *Shoreline Enterprises,* however, are quite different from those here. The intervening employees in that case were clearly within the bargaining unit, and

discovered in sufficient time to permit its correction before the balloting begins, which was not the case here. *See Southampton Marine Corp.,* 217 N.L.R.B. 649, 89 L.R.R.M. 1117 (1975); *Pyper Construction Co.,* 177 N.L.R.B. 707, 71 L.R.R.M. 1501 (1969).

We do not in any sense imply approval of the practice followed here in settling the voter list. Written agreements, under the *Norris-Thermador* rule noted above, are obviously far preferable to such loose procedures as these. But we do refuse to elevate *Norris-Thermador* to the status of a statute of frauds, especially where an agent of the party urging us to do so—the Board—himself made the arrangements for definition of the list and voting unit and assured the employer that the union had agreed to it. Indeed, under these circumstances classic notions of estoppel would likely prevail even were a statute of frauds before us.

Accordingly, for the reasons set out above, the application for enforcement of the Board's order is DENIED.

---

their exclusion had been made with full knowledge of their eligibility on the part of the union, the company, and the Board. These facts were probably crucial to the decision in *Shoreline;* otherwise parties could seemingly never re-solve even genuine issues of eligibility, as the Board has held that they can. *See Pyper Construction Co.,* 177 N.L.R.B. 707, 708, 71 L.R. R.M. 1501, 1502 (1969).