**SMITH AND SMITH AIRCRAFT COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–1356.

United States Court of Appeals, Tenth Circuit.

May 30, 1984.

Donald E. Hill, Wichita, Kan. (Robert D. Overman and W. Stanley Churchill, Wichita, Kan., on brief), of Martin, Churchill & Overman, Wichita, Kan., for petitioner.

Linda Weisel, Atty., Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Allison W. Brown, Jr. and Christine Weiner, Attys., on brief), N.L.R.B., Washington, D.C., for respondent.

Before McWILLIAMS, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

Smith and Smith Aircraft Company appeals from a finding by the National Labor Relations Board that the Company violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5), by refusing to bargain with the Laborer's International Union, Local 8, AFL–CIO. The Board had certified the Union as the exclusive representative of the Company's employees after a representation election. The Board's order requires the Company to bargain with the Union upon request and to post appropriate notices.

We consider a single issue on appeal: whether the policy of giving conclusive effect to pre-election agreements on voter eligibility applies when a potentially determinative number of eligible voters were denied the right to vote in a representation election because of clerical errors that all parties were informed about long enough before the election to rectify easily without disruption of the election procedures. The Board held that the pre-election agreement must be given conclusive effect. We reverse.

At a representation hearing on bargaining unit and eligibility issues on February 23, 1981, the Company and the Union executed a Stipulation Election Agreement waiving a representation hearing and agreeing to terms for holding an election. In addition, the Company and Union entered into a Norris-Thermador agreement, see Norris-Thermador Corp., 119 N.L.R.B. 1301 (1958), which stated in part:

"The parties hereby agree that the employees listed below shall comprise the only voters eligible to vote in the election to be held on March 25, 1981, and this agreement as to employee eligibility to vote shall be final and binding upon the parties and shall be dispositive of all issues as to eligibility."

The following day the Company discovered that employee James E. Boham was inadvertently omitted from the eligibility list and immediately notified the Union. Three days later the Company discovered that employee Gary L. Grimes also had been

inadvertently omitted from the list because of a clerical error. In a letter dated February 27, 1981, the Company forwarded to the Board the "Excelsior" list of names and addresses of employees, to the Board, which included the names of Boham and Grimes as eligible voters.[1] At the same time it notified the Union of its inadvertent omission of Grimes from the original list.[2]

The Board furnished the Excelsior eligibility list to the Union over three weeks before the election, which was scheduled for March 25, 1981. The Board required the Union to advise it immediately whether the Union agreed with the employees included on the Excelsior list and to submit any objections to the Board by March 9, 1981. The Union notified the Board on March 6 that it objected to the addition of Grimes and Boham to the eligibility list because their names were not included on the Norris-Thermador list. Boham and Grimes believed that they were eligible to vote and wanted to vote.

Sixteen employees cast ballots for and fourteen against the Union. The ballots of Grimes and Boham were challenged and therefore not opened; one ballot was voided. Since the challenged ballots could affect the outcome of the election the Regional Director conducted an investigation and issued a report. The Regional Director found, based on evidence submitted by the Company, that Boham and Grimes were employed by the Company on the payroll cut-off date for eligibility. He recommended, however, that the ballots of Boham and Grimes be excluded because of the parties' Norris-Thermador agreement and that the Board certify the Union.

On appeal the Board held that the Union's challenges were properly sustained under *Norris-Thermador Corp.*, 119 N.L. R.B. 1301 (1958), and that no substantial and material issues of fact or law required a reversal or a more extensive hearing. Accordingly, the Board certified the Union. When the Company refused to bargain with the Union, unfair labor practice charges were brought and the Board ordered the Company to bargain with the Union. It is from this decision that the Company appeals.

The Company argues that *Southampton Marine Corp.*, 217 N.L.R.B. 649 (1975), forbids the enforcement of a Norris-Thermador agreement to disenfranchise employees otherwise eligible to vote. In *Southampton*, an employee's name was inadvertently omitted from a Norris-Thermador agreement. The Excelsior eligibility list submitted by the company included the employee's name and address with a notation that the omission of his name from the Norris-Thermador list was an oversight. The union promptly requested that the company add the employee's name to the list of eligible voters, but the company refused. At the election, the company challenged the employee's ballot on the ground that his name did not appear on the Norris-Thermador eligibility list. The Regional Director sustained the challenge to the ballot, finding that the inadvertent omission of an employee from a Norris-Thermador agreement does not affect the agreement's final and binding determination of voter eligibility. The Board reversed and held that the ballot should be counted because (1) there was no dispute concerning the employee's eligibility to vote; (2) the failure to include the employee on the written eligibility list was a mistake; and (3) the Board was notified of the mistake more than ten days before the election, which was enough time to include the employee

---

1. *Excelsior Underwear, Inc.*, 156 N.L.R.B. 1236 (1966), requires the Company to provide the Board with a list of the names and addresses of eligible voters within seven days after the parties enter into a consent-election agreement or after the Board has directed an election. The Board then furnishes this eligibility list to the Union.

2. Neither party questions the employees' status as full-time employees of the bargaining unit. Boham was apparently omitted from the list because his personal file got stuck in the filing cabinet when the files were pulled to compile the list of eligible employees. Grimes was a new employee whose personnel file had not been completed when the secretary made the list of employees.

as a voter without disrupting the election procedure. The Board stated,

"We perceive no sound policy reasons for sustaining the challenge to an employee's ballot in such circumstances, thereby depriving him of the right to cast a ballot to which all parties conceded he was entitled.

We do not believe that *Norris-Thermador* was intended to deprive an otherwise eligible voter of his ballot when the inadvertence of excluding his name from the list was admitted and discovered in enough time to amend the agreement to include the employee, without any disruption of the election procedures, and where the parties in effect were agreed that the employee's name would have been included on the list but for such an error."

*Id.* at 649. As far as we can discern, the only factual difference between *Southampton* and this case is that in *Southampton* the company challenged the employee's ballot while in this case the Union challenged the ballots. More important, the policy questions in both cases are identical.

The Board attempts to distinguish *Southampton* from the case at bar, arguing that in *Southampton* the union accepted the employer's concession that it had made a mistake and immediately requested that the employer rectify the mutually perceived error by modifying the parties' eligibility agreement. In effect, the Board is arguing that after discovering that an employee had been omitted from a Norris-Thermador agreement, the parties in *Southampton* made a second agreement to add the employee to the Norris-Thermador list of eligible voters.[3] The Board asserts that since the Company and the Union entered into no such agreement in this case, *Southampton* does not compel the Board to allow the omitted employees to vote. The Board's argument is unconvincing. In *Southampton* the union promptly requested that the employee's name be added to the Norris-Thermador list, but the company refused to do so. Logic compels us to conclude that if the union and the company had agreed to add the employee, as the Board contends, the company would not have refused to add the employee or challenged the employee's ballot at the election. Indeed, *Southampton* never would have been presented to the Board for a decision.

The *Southampton* case merely indicates that the parties "in effect were agreed" that the employee's name would have been included on the Norris-Thermador list but for the error, because the company had no legitimate reason to deny the employee the right to vote. Here the record incontrovertibly indicates that both employees were eligible to vote. Employment applications, timecards, and Company payroll ledgers establish that Boham and Grimes were hired as assemblers effective December 1, 1980, and February 16, 1981, respectively. Boham and Grimes continued to work as full-time production employees beyond the date of the election, March 25, 1981. The pay-

---

**3.** On August 24, 1982, this Court issued an order, over the Board's objection, granting the Company's motion to supplement the record with an affidavit of a former Board attorney who worked on the *Southampton* case. The Court ordered the Company to obtain and submit the affidavit, but stated, "[T]his grant of supplementation is made subject to the determination of the hearing panel as to the relevancy of the affidavit." The affidavit addressed whether the parties in *Southampton* in fact agreed to add the omitted employee's name to the Norris-Thermador agreement or to permit the employee to cast an unchallenged ballot. The Board argues that we should not permit supplementation because (1) section 10(e) of the Act precludes the Company from relying on the affidavit because it raises an issue not previously presented by the Company to the Board; (2) the affidavit constitutes an improper attempt to probe the Board's decision-making process and is not probative of the meaning of the Board's published decision; (3) the Company failed to meet the Act's requirements for supplementation of the record; and (4) in obtaining the affidavit the Company evaded the prohibition contained in 18 U.S.C. § 207 which forbids former Board employees from acting on behalf of other parties on matters in which they formerly represented the United States. We find that we are able to reach our decision in this case based on the *Southampton* decision as published and therefore find it unnecessary to determine whether the affidavit is relevant and whether this Court properly permitted supplementation of the record.

roll period for eligibility to vote in the election was the payroll period ending February 20, 1981, at which time both Boham and Grimes were production employees on the Company's payroll. Neither the Union nor the Board presented any evidence to the contrary. Indeed, in its brief the Board acknowledges that the employees would have been eligible to vote were it not for the Norris-Thermador agreement. Brief for the NLRB at 21. Thus, we find that the Union and Company "in effect" agreed that the only legitimate dispute concerning the eligibility of Boham and Grimes was their inadvertent omission from the Norris-Thermador agreement. The question before us, then, is whether the rule of *Southampton* is correct.

The Board correctly points out that "Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees," *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946); *accord NLRB v. P.A.F. Equipment Co.*, 528 F.2d 286, 287 (10th Cir.1976), and that in the exercise of its supervisory authority over elections the Board has long encouraged the parties to enter into pre-election agreements definitively resolving issues of voter eligibility. *See Stanley Aviation Corp.*, 112 N.L.R.B. 461 (1955). The Board cites *Pyper Construction Co.*, 177 N.L.R.B. 707 (1969), a case involving the exclusion of a potential voter in a union election, for the proposition that the Board will not usually resolve disputed issues concerning omissions from a Norris-Thermador agreement. *Pyper* states,

> "The Board will honor concessions made in the interest of expeditious handling of representation cases, even though there may be some question about including certain employees in the unit, or excluding them from it, were the matter litigated."

*Id.* at 708. *Pyper* is distinguishable from *Southampton* and the case at bar because the parties in *Pyper* did not learn of the omission in time to prevent disruption of the election procedure; indeed, they first learned of the omission when the employee tried to vote on the day of the election. *Southampton* cited and distinguished *Pyper.* *See also Laymon Candy Co.*, 199 N.L.R.B. 547 (1972) (parties may not include as an eligible voter in an otherwise valid Norris-Thermador agreement a person who is a supervisor under the Act).

The Board cites numerous cases for the proposition that a pre-election agreement is a binding contract between the parties, *e.g., NLRB v. United Dairies, Inc.*, 337 F.2d 283, 286 (10th Cir.1964), and must be enforced unless contrary to the Act or established Board policy. *E.g., Tidewater Oil Co. v. NLRB*, 358 F.2d 363, 366 (2d Cir. 1966); *The Tribune Co.*, 190 N.L.R.B. 398 (1971); *see also NLRB v. J.J. Collins' Sons, Inc.*, 332 F.2d 523, 525 (7th Cir.1964) (the Board should not infuse itself in a determination of an appropriate bargaining unit when the Board is merely interpreting the language used by the parties to define and limit the unit in a stipulation for consent election); *NLRB v. Schapiro & Whitehouse, Inc.*, 356 F.2d 675, 677 (4th Cir.1966) (parties' agreement to include employee upheld despite Board's finding that employee had insufficient community of interest with unit employees); *NLRB v. Mike O'Connor Chevrolet-Buick-GMC Co.*, 512 F.2d 684, 687 (8th Cir.1975) (court upheld parties' agreement to include salesman although Board sustained a challenge to his vote on the basis of his supervisory status); *NLRB v. Joclin Mfg. Co.*, 314 F.2d 627, 633 (2d Cir.1963) (court overruled Board's decision to allow two employees to vote who were not within the stipulated bargaining unit); *NLRB v. Flowers Baking Co.*, 578 F.2d 1145 (5th Cir.1978) (court enforced parties' exclusion of employee although Board found employee entitled to vote). None of these cases addressed a fact situation on all fours with the case at bar, although several contain statements that support our ruling. For example, in *Joclin Mfg.* the court noted that there may be situations when an agreement reached between company and union as to the appropriate

bargaining unit should not be enforced by the Board because it improperly disenfranchises employees, "but nothing would indicate this to be such a case." 314 F.2d at 633. *See also Shoreline Enterprises of America, Inc. v. NLRB,* 262 F.2d 933 (5th Cir.1959). And in *Flowers Baking,* the court stated that the inadvertent omission of an eligible employee does not necessarily render a voting list susceptible to challenge, but citing *Southampton* and *Pyper,* held that an eligible employee will be entitled to vote if the mistake is discovered in sufficient time to permit its correction before the balloting begins. 578 F.2d at 1147–48.

We recognize that in the vast majority of cases election stipulation and Norris-Thermador agreements constitute "justifiable and reasonable adjustment[s] of the democratic process." *NLRB v. A.J. Tower Co.,* 329 U.S. 324, 333, 67 S.Ct. 324, 329, 91 L.Ed. 322 (1946). This is especially true when one considers that in the fiscal year ending September 30, 1980, alone the Board conducted 8,531 elections. 45 NLRB Ann.Rep. 17 (1980). However, the employees' right to vote in a representation election is also an important right deserving protection. In a situation in which clearly eligible voters are denied the right to vote even though all parties are advised of their inadvertent omission three weeks before the election, we hold that these employees must be permitted to cast their ballots. Accordingly, we deny enforcement of the Board's order requiring the Company to collectively bargain, invalidate the Union's certification, and order that the ballots of employees Boham and Grimes be opened and counted in the election.

IT IS SO ORDERED.