157 F.3d 909
 159 L.R.R.M. (BNA) 2321, 332 U.S.App.D.C. 316,
136 Lab.Cas. P 10,259
 THOMAS-DAVIS MEDICAL CENTERS, P.C. and FPA Medical
Management, Inc., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Federation of Physicians and Dentists/AHPE, NUHHCE, AFSCME,
AFL-CIO, Intervenors.
FPA MEDICAL MANAGEMENT, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
United Health Care Employees/AHPE, NUHHCE, AFSCME, AFL-CIO,
Intervenors.
 Nos. 97-1454, 97-1660.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 1, 1998.
Decided Sept. 29, 1998
 
 On Petitions for Review and Cross-Applications for Enforcement of Orders of the National Labor Relations Board.
 Minh N. Vu argued the cause for the petitioners. Maureen E. Mahoney and Gregg J. Tucek were on brief.
 Julie B. Broido, Attorney, National Labor Relations Board, argued the cause for the respondent. Linda Sher, Associate General Counsel, John D. Burgoyne, Acting Deputy Associate General Counsel, and Peter D. Winkler, Attorney, were on brief.
 Susan J. Martin argued the cause for the intervenors.
 Before: EDWARDS, Chief Judge; HENDERSON and GARLAND, Circuit Judges.
 KAREN LeCRAFT HENDERSON, Circuit Judge:
 
 
 1
 Petitioners Thomas-Davis Medical Centers, P.C. (TDMC) and its sole shareholder FPA Medical Management, Inc. (FPA) seek review of two separate decisions of the National Labor Relations Board (NLRB, Board) that concluded the petitioners violated section 8(a)(1), (5) of the National Labor Relations Act (NLRA, Act), 29 U.S.C. § 158(a)(1), (5). The Board found that TDMC unlawfully refused to bargain with, sequentially: (1) the Federation of Physicians and Dentists, AHPE, NUHHCE, AFSCME, AFL-CIO, (Physician Union), which had been certified as the bargaining representative of physicians at TDMC's six medical clinics in Pima County, Arizona, Thomas-Davis Med. Ctrs., P.C., 324 N.L.R.B. No. 15 (July 24, 1997), and (2) the United Health Care Employees, NUHHCE, AFSCME, AFL-CIO, (Staff Union), which had been certified as the bargaining representative of support staff at TDMC's clinics, FPA Medical Management, Inc., 324 N.L.R.B. No. 128 (Oct. 22, 1997). In each case the Board determined that its "no-relitigation" rule precluded TDMC from arguing that its physicians were statutory "supervisors"[1] of support staff after TDMC voluntarily withdrew the issue during the evidentiary hearing to determine the appropriate bargaining unit at the start of the Physician Union representation proceedings. FPA petitioned for review of each of the NLRB's two final unfair labor practice decisions, contending that it was not afforded an opportunity in either case to show that the TDMC physicians were statutory supervisors by virtue of their supervision of support staff. The Board filed a cross-application for enforcement of each decision. The court has jurisdiction under section 10(e)-(f) of the NLRA, 29 U.S.C. § 160(f). For the reasons set out below, we slice the baby in twain: we deny review and grant enforcement of the Physician Union decision and we remand the Staff Union case for the Board to explain its application of the no-relitigation rule to bar litigation of the supervision issue in the representation and unfair labor practice proceedings based on TDMC's earlier waiver of the argument in the Physician Unit representation proceeding. We address each petition separately.I. The Physician Union Case
 
 
 2
 On September 4, 1996 the Physician Union petitioned the Board for certification as the exclusive representative of TDMC's "Regular Full Time and Regular Part-time Physicians, including physicians elected Department Chairpersons." TDMC, then a wholly owned subsidiary of Foundation Health Corporation (Foundation), opposed the certification petition on various grounds, including that the physicians were statutory supervisors because, inter alia, they supervised support staff.[2] An evidentiary hearing was conducted in late September 1996 to determine whether the proposed bargaining unit was appropriate. Toward the end of the hearing TDMC expressly withdrew its support staff supervision argument. At the time FPA had entered an agreement to purchase all of TDMC's stock from Foundation with the transfer planned for the beginning of October 1996. Although acquisition was delayed "due to a routine audit by the Securities and Exchange Commission," FPA began managing TDMC on October 1, 1996 under a management agreement with Foundation. Joint Appendix (JA) 2, 6.
 
 
 3
 On November 8, 1996 the Board's Regional Director issued a decision and direction of election which rejected TDMC's arguments that the doctors were supervisors (except the withdrawn supervision argument which the decision did not address). On November 26, 1996 TDMC filed a request for review of the Regional Director's decision on a number of grounds but did not seek to revive the support staff supervision argument. On December 19, 1996 FPA, which had finally acquired TDMC's stock effective November 29, 1996, filed a notice of appearance in the NLRB proceeding. On January 7, 1997 the Board issued a brief order denying TDMC's request for review.
 
 
 4
 On January 8, 1997 FPA filed a motion for rehearing and to reopen the record "[i]n order to provide FPA with an opportunity to present its position to the Board, and in order that the Board may consider evidence of changes in operations which have been implemented by FPA after its acquisition of those operations and which impact the issues raised in the Board's decision." JA 433-34. On January 17, 1997 the Board denied the motion because FPA "fail[ed] to specify what additional evidence it would adduce and how, if adduced and credited, such evidence would require a different result." JA 436.
 
 
 5
 On February 19, 1997 FPA filed another motion for rehearing or to reopen the record on the ground that it had had no opportunity to participate in the proceeding "until after the hearing on September 26, 27 and 30, and after the Regional Director's Decision and Direction of Election had issued." JA 439. The motion was accompanied by an affidavit alleging, for the first time since the issue was withdrawn during the September 1996 hearing, that TDMC's physicians supervised the clinics' support staff employees.[3] On March 18, 1997 the Board issued an order denying the motion "as it is untimely and because it does not establish the existence of newly discovered evidence." JA 448.
 
 
 6
 In the meantime, the Physician Union had prevailed in a union election on December 5, 1996 and had been certified on February 3, 1997 as the collective bargaining agent for the TDMC physicians. From February 15 through March 21, 1997 the Physician Union made several demands that TDMC bargain with it. On March 24, 1997 TDMC's lawyer responded: "Your demand for bargaining is rejected since the unit is improperly certified." JA 482. The Board's General Counsel subsequently filed a complaint charging FPA with an unfair labor practice for refusing to bargain.[4] TDMC and FPA admitted refusing to bargain but asserted as a defense that TDMC was "not required to bargain with the [Physician Union] because [the Physician Union] does not represent an appropriate unit under the National Labor Relations Act." JA 483-84. On July 24, 1997 the Board granted summary judgment against TDMC and FPA, ordering them to cease and desist unfair labor practices and to bargain with the Physician Union. The Board summarily explained its decision as follows:
 
 
 7
 All representation issues raised by the Respondents were or could have been litigated in the representation proceeding. The Respondents do not offer to adduce at a hearing any newly discovered and previously unavailable evidence, nor do they allege any special circumstances that would require the Board to reexamine the decision made in the representation proceeding. We therefore find that the Respondents have not raised any issue that is properly litigable in this unfair labor practice proceeding. See Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). Accordingly, we grant the General Counsel's Motion for Summary Judgment.
 
 
 8
 324 N.L.R.B. No. 15, slip op. at 1-2.
 
 
 9
 FPA petitions for review of the NLRB's unfair labor practice decision on the ground that the Board acted arbitrarily when it refused to reopen the evidentiary record. We reject FPA's challenge because the Board's refusal was not an abuse of discretion. See Road Sprinkler Fitters Local Union No. 669 v. NLRB, 789 F.2d 9, 14 (D.C.Cir.1986) ("[A] decision to reopen the record is within the Board's discretion.") (citing Road Sprinkler Fitters Local Union No. 669 v. NLRB, 676 F.2d 826, 829 n. 10 (D.C.Cir.1982)); NLRB v. Amalgamated Clothing & Textile Workers Union, 662 F.2d 1044, 1045 (4th Cir.1981).
 
 
 10
 "It is well established that, in the absence of newly discovered evidence or other special circumstances requiring reexamination of the decision in the representation proceeding, a respondent is not entitled to relitigate in a subsequent refusal-to-bargain proceeding representation issues that were or could have been litigated in the prior representation proceeding." Westwood One Broadcasting Servs., Inc., 323 N.L.R.B. No. 175, 1997 WL 331,860, at * 1 (June 16, 1997) (citing Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941)), enforced, No. 97-3495, 159 F.3d 1352 (3d Cir. July 28, 1998); see also 29 C.F.R. § 102.67(f) ("Failure to request review [within 14 days after regional director's unit decision] shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding."); Soft Drink Workers Union Local 812 v. NLRB, 937 F.2d 684, 688 (D.C.Cir.1991); NLRB v. Mar Salle, Inc., 425 F.2d 566, 571-72 (D.C.Cir.1970); Amalgamated Clothing Workers of Am. v. NLRB, 365 F.2d 898, 903-06 (D.C.Cir.1966).
 
 
 11
 FPA offered no "newly discovered evidence" to justify deviating from the general no-relitigation rule but contends it demonstrated special circumstances, namely, that in September 1996 TDMC's then-owner Foundation had "different incentives" from FPA, which motivated Foundation to withdraw the supervision argument--a step FPA, had it then owned TDMC, would not have taken. Even assuming conflicting interests between the successive owners--and we do not claim to comprehend entirely the conflict argument urged--FPA has not explained why its inertia persisted as long as it did.[5] FPA declined to participate in the NLRB representation proceeding, not only during the September 1986 evidentiary hearing but even after FPA assumed management of TDMC on October 1, 1996 and for weeks after it acquired the company outright on November 29, 1996. It was not until December 19, 1996, almost six weeks after the Regional Director's decision that the physicians were not supervisors, that FPA even filed a notice of appearance. No further action was taken until January 18, 1997 when FPA filed a motion for rehearing and to reopen the record. Yet even then FPA made no attempt to revive the waived supervision argument. Given FPA's sustained torpor throughout this period, we cannot say that the Board abused its discretion in refusing to consider the argument when finally asserted in support of FPA's February 19, 1997 motion.
 
 II. The Staff Union Case
 
 12
 In December 24, 1996 the Staff Union filed a petition for certification as bargaining representative of TDMC's support staff employees. A "stipulation" election was conducted on February 13, 1997 and the union prevailed.[6]
 
 
 13
 On February 20, 1997 FPA filed objections to the Staff Union election based on "[s]upervisory and management personnel interference on behalf of the union petitioner in the non-supervisory employees' election decision which likely impaired the employees' freedom of choice in the election" and "[o]ther acts of interference which restrained, coerced or interfered with the employees' section 7 rights." JA 860. On February 28, 1997 FPA filed supporting affidavits alleging specific unlawful pro-union activities by physician supervisors. On March 5, 1997 the Regional Director recommended that FPA's objections be overruled and that the Staff Union be certified because the physicians' supervisory status "was previously and comprehensively litigated" in the Physician Union proceeding. JA 881. TDMC filed a request for review of the Regional Director's recommendation on March 18 1997 and a revised request for review on March 24, 1997. On June 10, 1997 the Board issued a decision summarily rejecting TDMC's objections to the Regional Director's report and recommendation, adopting his findings and recommendations and certifying the Staff Union as the representative of support staff employees.
 
 
 14
 When TDMC subsequently refused to bargain with the Staff Union, the General Counsel again filed an unfair labor practice complaint against FPA. As a defense FPA asserted it did "not have an obligation to bargain with the [Staff Union] because supervisory personnel interfered with the Union election." JA 1050. On October 22, 1997 the Board again granted summary judgment against FPA, stating, in language almost identical to that in the July 24, 1997 Physician Union decision:
 
 
 15
 All representation issues raised by the Respondent were or could have been litigated in the prior representation proceeding. The Respondent does not offer to adduce at a hearing any newly discovered and previously unavailable evidence, nor does it allege any special circumstances that would require the Board to reexamine the decision made in the representation proceeding. We therefore find that the Respondent has not raised any representation issue that is properly litigable in this unfair labor practice proceeding. See Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). Accordingly, we grant the Motion for Summary Judgment.
 
 
 16
 324 N.L.R.B. No. 128, slip op. at 1.
 
 
 17
 As in the Physician Union case, FPA contends that the Board's use of the no-relitigation rule improperly deprived FPA of all opportunity to raise the staff supervision issue. In this case, which arrives in a different posture from the Physician Union case--and, as far as we can tell, a unique one--we conclude that the Board failed to adequately explain its reliance on the rule in light of past practice.
 
 
 18
 The no-relitigation rule, as formulated in the Board's case law and rules, bars relitigation of a waived issue only in an unfair labor practice proceeding that is "related" to the proceeding in which the waiver occurred. See 29 C.F.R. § 102.67(f) and Westwood One Broadcasting Servs., Inc., 323 N.L.R.B. No. 175, 1997 WL 331,860, at * 1 (both quoted supra, p. 912). It is by no means clear that the Staff Union proceedings, in which the no-relitigation bar was invoked, were "related," as the Board has previously used the term, to the Physician Union representation proceeding in which TDMC waived the supervision argument. In the past the Board has applied its rule in unfair labor practice proceedings[7] to preclude relitigation of an issue that could have been raised in an earlier proceeding in the same case involving the same local and the same bargaining unit. By contrast, here the Board invoked the rule as a bar during the Staff Union certification proceeding based on the fact that TDMC could have raised the supervision argument in the separate Physician Union case which addressed whether a different local was to represent a different bargaining unit. The Board must provide a reasoned explanation, either consistent with precedent or explaining its departure therefrom, if it chooses to so expand the rule's scope and it has offered none. See Hicks v. NLRB, 880 F.2d 1396, 1400 (D.C.Cir.1989) (remanding to Board "for further action either consistent with its existing precedents or for generation of a new jurisdictional rule" where Board decision below "revealed no reasoning by which to fit its extension of jurisdiction"); ConAgra, Inc. v. NLRB, 117 F.3d 1435, 1443-44 (D.C.Cir.1997) ("[I]t is 'axiomatic that an agency adjudication must either be consistent with prior adjudications or offer a reasoned basis for its departure from precedent.' ") (quoting Kelley v. FERC, 96 F.3d 1482, 1489 (D.C.Cir.1996)). Neither the summary certification decision of June 10, 1997 nor the boilerplate language in the October 22, 1997 unfair labor practice order satisfies this standard. Accordingly, the matter must be remanded to the Board for explanation.
 
 
 19
 For the preceding reasons we deny the petition for review and enforce the Board's bargaining order in the Physician Union case (No. 97-1454) and deny enforcement and grant review in the Staff Union case (No. 97-1660). We remand in the latter for the Board to explain whether and, if so, how the Staff Union refusal-to-bargain and certification proceedings are "related" to the Physician Union representation proceeding so as to come within the scope of the Board's no-relitigation rule. If the Board cannot do so, it must reconsider the staff supervision issue, as appropriate, in the Staff Union case.
 
 
 20
 So ordered.
 
 
 
 [1]
 The NLRA excludes from its definition of "employee ... any individual employed as a supervisor." 29 U.S.C. § 152(3). A "supervisor" is defined as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." Id. § 152(11)
 
 
 [2]
 TDMC also argued that the proposed unit's state-wide scope was inappropriate and that the physicians were supervisors or managers because they supervised seven allied health professionals and participated in standing committees and task forces
 
 
 [3]
 Although FPA indicated in its January 8, 1997 motion that it intended to produce evidence of post-acquisition operational changes relevant to the physicians' supervisory status, the affidavit alleged none
 
 
 [4]
 "Refusing to bargain and thereby engendering an unfair labor practice complaint is the standard route to challenge a certification order, which is not subject to direct review." B B & L, Inc. v. NLRB, 52 F.3d 366, 369 n. 2 (D.C.Cir.1995) (citations omitted)
 
 
 [5]
 The Board "has recognized that a stock transfer is 'the continuing existence of a legal entity, albeit under new ownership.' Hendricks-Miller Typographic Co., 240 NLRB 1082, 1083 fn. 4 (1979)," and "has also held that the 'mere change of stock ownership does not absolve a continuing corporation of responsibility under the Act.' Miller Trucking Services, 176 NLRB 556 (1969), affd. in this respect 445 F.2d 927 (10th Cir.1971), and relied on in Topinka's Country House, 235 NLRB 72, 74 (1978), enfd. 624 F.2d 770 (6th Cir.1980)." Rockwood Energy & Mineral Corp., 299 N.L.R.B. 1136, 1139 (1990), enforced, 942 F.2d 169 (3d Cir.1991)
 
 
 [6]
 A "stipulation" election is one held pursuant to an agreement between the employer and the union "waiving a representation hearing and agreeing to terms for holding an election." Smith & Smith Aircraft Co. v. NLRB, 735 F.2d 1215, 1216 (10th Cir.1984)
 
 
 [7]
 The Board has limited a "related" unfair trade practice proceeding to one which involves a § 8(a)(5) refusal-to-bargain charge, expressly excluding from the rule's coverage § 8(a)(1) and § 8(a)(3) proceedings. See Clark & Wilkins Indus., Inc. v. NLRB, 887 F.2d 308, 316 (D.C.Cir.1989), cert. denied, 495 U.S. 934, 110 S.Ct. 2177, 109 L.Ed.2d 505 (1990)