**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FAMILY HERITAGE HOME–BEAVER DAM, INC., Respondent.**

No. 72–1443.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1973.

Feb. 12, 1974.

---

13.  *Id.* at 327, 53 S.Ct. 615.

Peter G. Nash, Gen. Counsel, Kenneth B. Hipp, Atty., N.L.R.B., Washington, D. C., for petitioner.

John S. Greenebaum, Louisville, Ky., for respondent.

Before CASTLE, Senior Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

The National Labor Relations Board is seeking enforcement of its order of March 29, 1972, requiring Family Heritage Home-Beaver Dam, Incorporated and "its officers, agents, successors, and assigns" to bargain collectively with Local 150, Service and Hospital Employee's International Union, AFL–CIO. At the time of the events giving rise to the

Board order, Family · Heritage was a Wisconsin corporation engaged in the operation of a nursing home at Beaver Dam, Wisconsin.

Two questions are presented: (1) whether the Board properly found that Family Heritage violated Section 8(a)(1), (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5), by refusing to bargain with the certified representative of its employees; and (2) whether this action for enforcement is rendered moot by the alleged sale of the nursing home, after entry of the Board order, to National Health Enterprises, Incorporated.

On April 29, 1971, the Union filed a petition under Section 9(c) of the Act, 29 U.S.C. § 159(c), seeking certification as the collective bargaining representative of certain of the Family Heritage employees.[1] On July 15, 1971, there was an election at which eighteen ballots were counted for the Union; seventeen against; and three unopened ballots were challenged, one by Family Heritage, and two (including that of Jeanne Stern) by the Board Agent conducting the election on the ground that their names did not appear on the eligibility list. On August 24, 1971, after investigation, but no hearing,[2] the three challenges were upheld and the Union was certified.

On August 31, 1971, Family Heritage requested review of the certification decision asserting that the challenged ballot cast by Jeanne Stern should have been counted or in the alternative that a hearing should have been conducted after the election to settle substantial and

material factual questions raised by its exceptions. The Board denied this request.

The Union requested that Family Heritage bargain. Family Heritage refused, and a complaint issued. On March 29, 1972, the Board granted General Counsel's motion for summary judgment,[3] and entered the order presently before this court.

### (1) The Validity of the Certification

It is undisputed that the Company refused to recognize and bargain with the Union after certification. Accordingly, review must focus on the validity of the certification.

■ Family Heritage first complains that the Regional Director applied an arbitrary standard in considering the challenge to Jeanne Stern's ballot and rejecting it because, although hired early enough to be eligible, she had not begun work. We disagree. The election direction made eligible those "employed" during the payroll period. The Board's settled policy is that ordinarily an employee must be both "hired and working" on the eligibility date in order to participate in a Board-directed election. This rule was adopted to simplify the process of identifying eligible voters: objective evidence is usually available to pinpoint the time at which an employee commences work while the date of "hire" is often subject to dispute. Annot., 69 ALR2d 1191, 1199, § 8. Family Heritage notes that the Board makes exceptions to this rule for employees who have been temporarily laid off, who are absent on sick leave, or on

---

1. The Union sought to represent all employees at the nursing home including licensed practical nurses, maintenance employees, acting director and medical aides, excluding registered nurses, professional employees, guards and supervisors. Family Heritage does not contend that this unit is inappropriate for bargaining purposes.

2. 29 C.F.R. § 102.69(c) provides that the Regional Director shall investigate challenges and may request a hearing if there are "substantial and material factual issues" to resolve.

3. The Board found that all issues raised by Family Heritage in response to General Counsel's motion for summary judgment were or could have been litigated in the prior representation proceeding, and that accordingly, in the absence of an offer of newly discovered or previously unavailable evidence or special circumstances, no issues remained to be litigated. See Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941).

vacation, or who are engaged in an economic strike and accordingly do not work on the eligibility date. But the status of such individuals as employees with a stake in the outcome of the election is established prior to their "excused absence," presumably by application of the same standard, whether they were both "hired and working."

■ ■ The second claim of Family Heritage is that due process and Board rules were violated by the Board's failure to provide a hearing at any stage of the administrative proceedings on the challenge to Jeanne Stern's ballot. We conclude, however, that the Family Heritage exceptions to the Regional Director's findings did not demonstrate substantial and material unresolved factual questions. See Macomb Pottery Company v. N.L.R.B., 376 F.2d 450, 452–453 (7th Cir., 1967).

Accepting all factual assertions made by Family Heritage where in conflict with the Regional Director's findings based upon his post-election investigation, it appears that Jeanne Stern's name was not on the eligibility list; that she was hired on June 10, 1971; that she arrived at the nursing home at about 6:40 a. m. on June 11, 1971; that her normal working hours were from 7 a. m. to 3 p. m.; that it was not until after the investigation by the Regional Director that Family Heritage decided to pay Jeanne Stern for the extra twenty minutes on June 11, 1971, and to alter her timecard for that day to reflect a starting time of 6:40 a. m. rather than 7 a. m.; and that the payroll period during which an employee must have been "employed" in order to be eligible ended at 7 a. m., June 11. Family Heritage contends that her reporting for work at about 6:40 a. m. made her eligible. We conclude, however, that taking the facts as proffered by Family Heritage, Jeanne Stern's workday on June 11, as on all subsequent days, commenced at 7 a. m. and her presence 20 minutes early, even though ultimately compensated, was reasonably deemed not to be work during the preceding payroll period. Accord-

ingly, she was not eligible to vote and her lack of eligibility could properly be established without a hearing to resolve issues of fact.

### (2) *Mootness of the Board's Order.*

At the time of the Board-directed election on July 15, 1971, the Family Heritage Home-Beaver Dam, Incorporated, the named respondent in the unfair labor practice proceeding, was one of seven corporations, each operating a nursing home, and wholly owned by Extendicare. It is asserted in the Family Heritage brief that on August 31, 1971 (before completion of administrative action in the representation proceeding) the seven corporations were merged into Extendicare of Wisconsin, a wholly owned subsidiary of Extendicare; that by agreement executed June 14, 1972, subsequent to the Board's final order in the unfair labor practice proceeding, the seven nursing home facilities were sold to National Health Enterprises, Inc. (sale of assets); and that there is no corporate relationship between Extendicare, or any of its subsidiaries and National Health Enterprises, or any of its subsidiaries.

The order of the Board directs "Family Heritage Home-Beaver Dam, Incorporated, its officers, agents, successors, and assigns," to bargain with the Union and to post specified notices. Family Heritage (presumably Extendicare of Wisconsin) argues that enforcement of the order as it stands is inappropriate because Family Heritage no longer has the means to carry out the affirmative action required by the order.

At the outset we note that the Board is not asking us to name National Health Enterprises, the purchaser as claimed, in our decree and to compel it, as successor, to carry out the Board order. Instead, the question is whether we should enter a decree compelling Family Heritage and its unspecified "officers, agents, successors, and assigns" to carry it out. Presumably, depending upon facts developed by further inquiry, the Board may contemplate subsequent

Board proceedings against National Health Enterprises, if warranted. See Golden State Bottling Company, Inc. v. N.L.R.B. 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); N.L.R.B. v. Burns Security Services, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1971).

Family Heritage suggests as an alternative to enforcement a remand to the Board for enlargement of the record as to the merger and sale, presumably pursuant to Section 10(e), 29 U.S.C. § 160(e).

In Southport Petroleum Co. v. N.L.R.B., 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718 (1942), where the respondent employer, like Family Heritage here, asserted that subsequent to the Board order it had discontinued operations and transferred assets, the Supreme Court affirmed the court's decree enforcing the Board's order and denying respondent's motion to dismiss or for leave to adduce additional evidence. Subsequently, courts of appeals have rejected mootness contentions on the ground that the application of Board orders to respondent employers which have undergone changes in ownership, or to successors, should be developed after enforcement in compliance proceedings before the Board or in contempt adjudications before the courts. N.L.R.B. v. West Coast Casket Company, Inc., 469 F.2d 871, 873 (9th Cir., 1972); N.L.R.B. v. Autotronics, Inc., 434 F.2d 651 (8th Cir., 1970); Cap Santa Vue, Inc. v. N.L.R.B., 137 U.S. App.D.C. 395, 424 F.2d 883, 885–886 (1970); N.L.R.B. v. Kostilnik, 405 F.2d 733, 734 (3rd Cir., 1969). See National Labor Relations Board v. Acme Mattress Co., 192 F.2d 524, 528 (7th Cir., 1951). *Contra*, N.L.R.B. v. McMahon, 428 F.2d 1213, 1214 (9th Cir., 1970); N.L.R.B. v. Schnell Tool & Die Corporation, 359 F. 2d 39, 44 (6th Cir., 1966).

■ Of course, an employer will not be held responsible for failure to perform acts genuinely made impossible by bona fide dissolution or sale occurring subsequent to the Board order but prior to a court decree. *West Coast Casket Company, supra; Cap Santa Vue Inc., supra; Kostilnik, supra.*

■ Ordinarily a court would not grant an injunction requiring affirmative action in the face of a serious assertion that the decree will be meaningless because it can no longer be carried out, without inquiry into the truth of such assertion.[4]

■ ■ Judicial and administrative economy, and our proper role in effectuating the purposes underlying the National Labor Management Relations Act, however, outweigh the gaps in logic and the minimal prejudice,[5] if any, caused by a decree at this stage. Our entry of a decree will adjudicate the merits of the Board order as to Family Heritage and all in privity with it. See Golden State Bottling Co. v. N.L.R.B., *supra,* 414 U.S. p. 179, 94 S.Ct. p. 422. The issues available to an alleged successor in proceedings against it will thereby be minimized.

Accordingly, the order will be enforced.

---

4. An alternative would be to remand to the Board under 29 U.S.C. § 160(e) for the taking of additional evidence about the alleged merger and sale. Upon filing of the Board's findings, we would then decide whether to enforce or deny the petition and against which corporate entity. See N. L. R. B. v. Schnell Tool & Die Corporation, 359 F.2d 39, 44 (6th Cir., 1966).

5. Because we presume that the Board will act with regularity and not seek compliance where such compliance is impossible, parties subject to our enforcement decree are unlikely to be prejudiced to any significant degree. (See National Labor Relations Board v. Acme Mattress Co., 192 F.2d 524, 528 (7th Cir., 1951)).