**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TOM WOOD DATSUN, INC., and Tom Wood Subaru, Inc., Respondent.**

**No. 84–2264.**

United States Court of Appeals,
Seventh Circuit.

July 11, 1985.

Victoria Higman, Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.

Ronald C. Smith, Smith & Iverson, Indianapolis, Ind., for respondent.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and GARZA, Senior Circuit Judge.*

CUMMINGS, Chief Judge.

The National Labor Relations Board (the "Board") seeks enforcement of its order finding that Tom Wood Datsun, Inc. and Tom Wood Subaru, Inc. (the "Company") had committed an unfair labor practice as defined in § 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with the Board-certified Retail, Wholesale, Department Store Union, Local 512 (the "Union"). The Company opposes enforcement, challenging the certification of the Union as the exclusive bargaining representative of the relevant unit of Company employees. We enforce the order.

I

The Union filed a petition with the Board on August 31, 1982, seeking a representation election in a unit of Company employees. The Regional Director conducted a secret ballot election on October 15, 1982, with the appropriate bargaining unit stipulated as all full-time and regular part-time salespersons. The tally of ballots showed that fifteen ballots were cast, with seven cast for representation by the Union, five against representation and with three ballots challenged. The Union challenged the three ballots contending that one employee, James Dulworth, was a supervisor or managerial employee and that two other employees, Howard Upchurch and William Sander, were not working for the Company on the September 14 stipulated cut-off date for voter eligibility.

The Regional Director ordered a hearing on the challenges and on January 7, 1983, the Hearing Officer issued his report recommending that the challenge to Dulworth's ballot be overruled and that the challenges to the Upchurch and Sander ballots be sustained for failure to perform bargaining unit work prior to expiration of the September 14 eligibility date (App. 10–15). The Company filed exceptions to the Hearing Officer's recommendations, arguing that Upchurch and Sander were hired and working on the eligibility date. On August 26, 1983, the Board adopted the Hearing Officer's findings and recommendations, denied the Company's exceptions, and pursuant to § 9(a) of the NLRA, 29 U.S.C. § 159(a),[1] certified the Union as the exclusive bargaining representative of the Company's salespersons (App. 8–9) (reported in 269 N.L.R.B. 926 (1984)).

Following certification, the Company refused the Union's request to bargain and was charged with committing an unfair labor practice under § 8(a)(1) and (5)[2] of the NLRA. The Company admitted its refusal to bargain but contested the validity of the Board's certification of the Union. On June 8, 1984, the Board granted its General Counsel's motion for summary judgment and ordered the Company to bargain (reported in 270 N.L.R.B. No. 162 (1984)). The Board seeks enforcement pursuant to § 10(e) of the NLRA, 29 U.S.C. § 160(e). The Company argues against enforcement on the ground that employees

---

* The Honorable Reynaldo G. Garza, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. Section 9(a) (29 U.S.C. § 159(a)) provides in pertinent part:
 Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment * * *.

2. Section 8(a)(1) and (5) (29 U.S.C. § 158(a)(1) and (5)) provide in pertinent part:
 (a) It shall be an unfair labor practice for an employer—
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
 * * * * * *
 (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

Sander and Upchurch were in fact engaging in bargaining unit work prior to the expiration of the eligibility date and were therefore "working" under the Board's settled "hired and working" requirement for voter eligibility. See *NLRB v. Family Heritage Home—Beaver Dam, Inc.*, 491 F.2d 347, 349 (7th Cir.1974).

## II

The sole issue in this case is the validity of the Board's decision to sustain challenges to the ballots of Howard Upchurch and William Sander and thereby to certify the Union. If the Board's certification was correct, the Company's refusal to bargain violated § 8(a)(1) and (5) of the NLRA and we must enforce the Board's June 8, 1984, order. See *NLRB v. Krieger-Ragsdale & Co.*, 379 F.2d 517 (7th Cir.1967), certiorari denied, 389 U.S. 1041, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968).

It is well settled that direct judicial review of a Board decision to certify a collective bargaining representative on the basis of an election is extremely limited. See *Mosey Manufacturing Co. v. NLRB*, 701 F.2d 610, 614 (7th Cir.1983) (*en banc*); *NLRB v. Olson Bodies, Inc.*, 420 F.2d 1187, 1189 (2d Cir.1970), certiorari denied, 401 U.S. 954, 91 S.Ct. 966, 28 L.Ed.2d 237. This requisite deference extends to both the Board's selection of rules and policies to govern elections and its application of those election rules. We have noted that "the Board enjoys an unusually broad discretion in deciding what rules to apply to election campaigns" and have stated that as a matter of policy "the soundness of an election rule is not the business of the reviewing court." *Mosey*, 701 F.2d at 615. This position is required because of the source of the Board's authority to issue such rules—two statutory provisions lacking specific standards, 29 U.S.C. § 141(b) and 29 U.S.C. § 159(c), which authorize the Board to conduct representation elections. 701 F.2d at 615. At a minimum, we will not question a Board election rule which in our view is reasonable.

In *Mosey* this Court ruled that the Board's application of election rules will be reviewed under the substantial evidence standard. 701 F.2d at 615. The burden of demonstrating that a Board decision is not supported by substantial evidence rests on the challenging party. See *NLRB v. Atkinson Dredging Co.*, 329 F.2d 158, 164 (4th Cir.1964), certiorari denied, 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736.

■ It is the Board's settled policy, which the Company does not challenge, that an individual "must be both 'hired' and 'working' on the eligibility date in order to participate in a Board-directed election." [3] *Family Heritage Home*, 491 F.2d at 349. The laudable purposes of the rule are to establish certainty and stability in the election process, see *PRS Limited, d/b/a F. & M. Importing Co.*, 237 N.L.R.B. 628, 632–633 (1978), and to simplify the process of identifying eligible voters. See *Family Heritage Home*, 491 F.2d at 349. A subsidiary rule had been adopted by the Board which defines "working" under the "hired and working requirement" as meaning the "actual performance of bargaining unit work" and excluding "participation in training, orientation or other preliminaries" (Board's Br. 9). See *Speedway Petroleum, Division of Emro Marketing Co.*, 269 N.L.R.B. 926, 926 n. 1 (1984) (petition for enforcement pending before this Court, filed March 27, 1985); *F. & M. Importing Co.*, 237 N.L.R.B. at 633. The Board explains that the "pre-work" rule serves two functions. It operates as a prophylactic against an employer's attempt to manipulate an election by hiring employees favorable to its position just prior to the election (Board's Br. 11 and oral argument). Second, the rule also is a "simple and fair" means of determining whether newly hired employees are part of the bargaining unit (Board's Br. 10). The requirement that actual bargaining unit work be performed helps to distinguish new hires from persons

---

**3.** Normally, as in this case, the parties to a Board election will enter into a stipulation setting a cutoff or eligibility date for determining the eligible voters in a unit.

merely seeking employment, since both groups normally engage in the same activities of filling out employment and insurance forms, touring the workplace, meeting supervisors and other employees and learning requirements of the job (Board's Br. 11). Thus the Board's definition of "working" enhances the purpose of the hired and working requirement of simplifying the process of identifying eligible voters. This explication shows that the rule is a reasonable one.

■ The Company makes only a feeble attempt to attack the rule. It argues that two other Circuits "appear" to view the purpose of the hired and working requirement as limiting the right to vote to those employees who have been exposed to the arguments for and against unionization and who therefore can cast an intelligent vote in the election (Br. 14–15; Reply Br. 7). See *NLRB v. Magnesium Casting Co.*, 668 F.2d 13 (1st Cir.1981); *NLRB v. Dalton Sheet Metal Company*, 472 F.2d 257 (5th Cir.1973). The Company suggests that a "rule of reason" would provide a better rule, whereby those employees who performed only pre-work activities on the eligibility date but who were exposed sufficiently to the union representation issues would be allowed to vote. This argument, however, does not even indirectly contest the reasonableness of the Board's rule excluding from eligibility employees engaging solely in pre-work activities as of the elgibility date. The Company also argues that service employees should be treated differently under the pre-work rule than employees in manufacturing, warehousing or other more physical work (Br. 11). Clearly the decision to make such a classification rests with the Board and not with this tribunal. We therefore conclude that the rule is well within the Board's broad rule-making discretion regarding election eligibility.

Prior NLRB cases cited by the Company as inconsistent with the pre-work rule, *Riviera Manor Nursing Home, Inc.*, 200 N.L.R.B. 333 (1972) (strike replacements at issue); *Tampa Sand & Material Co.*, 129 N.L.R.B. 1273 (1961) (signing of authorization cards at issue), are sufficiently distinguishable from the present case such that there was no need for the Board to explain its adoption of the Hearing Officer's recommendations and findings as a departure from accepted Board principles. See *Local 777, Democratic Union Organizing Committee v. NLRB*, 603 F.2d 862, 872 (D.C. Cir.1978).

■ Our remaining task is to determine whether substantial evidence supports the Board's conclusion that employees Sander and Upchurch were not performing actual bargaining unit work, but that instead "during the approximately four hours which the employees spent at the [Company's] facility on the eligibility date, their activities were restricted to completing employment forms, meeting other employees and surveying the facility and inventory" (App. 8). The record amply supports the Board's decision.

The major portion of the afternoon spent on the employer's premises by Upchurch and Sander on September 14, the final eligibility date, consisted of filling out forms and chatting with employees (Br. 13). It is uncontested that neither employee was instructed to nor attempted to sell automobiles. The Company explains that because of a "tent sale," which required removing inventory from the employer's premises, the new hires were precluded from selling cars (Br. 12), although they allegedly were available to service customers on September 14. The Board strongly contests the Company's allegations (Board's Br. 15), however, and there is evidence in the record to support the Board's position (Transcript at 193–194, 323, 431). In any event, the Board's test inquires whether actual bargaining unit work was performed and not whether such work could have been performed. The Company's argument that tasks performed by the employees, such as obtaining "inventory knowledge" and "product familiarization," do in fact constitute bargaining unit work merely amounts to an indirect attack on the pre-work rule (Br. 12), and must therefore

fail. Finally, and perhaps most significantly, both employees respectively entered September 15 on their employment applications (completed on the September 14 final eligibility date) as the day they were available to begin work (Transcript at 213, Company Exhibits 3 and 4), and therefore did not even view themselves as working on the eligibility date. Substantial evidence supports the Board's order.

For the reasons expressed above, the order of the Board is enforced.